1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

8    ALEXANDER LOPEZ,                              Case No.: 2:18-cv-00480-JCM-NJK

9          Petitioner,                             **Order**

10   v.

11   BRIAN WILLIAMS, et al.,

12         Respondents.

13

14         Alexander Lopez, a Nevada prisoner, filed a petition for writ of habeas corpus under 28

15   U.S.C. § 2254. This court denies Lopez's habeas petition, denies him a certificate of appealability,

16   and directs the clerk of the court to enter judgment accordingly.

17   **I.    BACKGROUND**

18         Lopez's convictions are the result of events that occurred in Clark County, Nevada on April

19   15, 2012. (ECF No. 14-26.) On April 15, 2012, around 1:00 a.m., Christian Ernesto Navarro

20   returned home after dropping his date off at her residence. (ECF No. 32-1 at 150, 152-53.) Navarro

21   was walking from the parking lot of his apartment complex to his apartment, a distance of

22   approximately 50 feet, when he saw "two people comin' at [him]." (*Id.* at 153-55.) When the two

23   individuals were near Navarro, one of the individuals put his hand on Navarro's chest and pulled

out a gun. (*Id.* at 157-58.) The individual then told Navarro in Spanish to "[d]rop [his] stuff or [he]'ll blow [his] head off." (*Id.* at 157.) Navarro followed the individual's instructions and placed his keys, cellular telephone, and wallet on the ground. (*Id.* at 160.) The second individual picked up Navarro's belongings from the ground, and Navarro "started walking away" as instructed by the individual with the gun. (*Id.* at 161-62.) When Navarro turned back around, he saw the two individuals run to a vehicle parked nearby and drive away. (*Id.* at 162.)

Detective Lance Spiotto testified that Navarro's stolen cellular telephone was pawned following the robbery. (ECF No. 15-1 at 26.) Detective Spiotto obtained surveillance video footage from the pawn store, showing that Telana Bell was the individual who pawned the cellular telephone. (*Id.* at 27.) Detective Spiotto contacted Bell, and Bell told Detective Spiotto a story about how she acquired the cellular telephone. (*Id.* at 28.) Bell's story involved the Stratosphere Hotel, but after Detective Spiotto obtained surveillance footage from that hotel, he determined that Bell had lied. (*Id.*) After speaking with Bell again, Detective Spiotto developed Lopez as a suspect. (*Id.* at 29.) Detective Spiotto then developed a photograph lineup, which included Lopez, and showed it Navarro. (*Id.* at 30.) Navarro identified Lopez as the man with the gun who robbed him. (*Id.* at 35-36.)

A jury found Lopez guilty of conspiracy to commit robbery and robbery with the use of a deadly weapon. (ECF No. 15-3.) Lopez was adjudged a habitual criminal and originally sentenced to 120 months to life for the conspiracy conviction and 120 months to life for the robbery conviction plus a consecutive term of 12 to 30 months for the deadly weapon enhancement.[1] (ECF

---

[1] On April 5, 2018, the state district court removed Lopez's sentence for the deadly weapon enhancement and issued an amended judgment of conviction. (ECF No. 17-24.)

No. 15-11.) Lopez appealed, and the Nevada Supreme Court affirmed on July 22, 2014. (ECF No. 16-9.) Remittitur issued on August 19, 2014. (ECF No. 16-10.)

Lopez filed a pro se state habeas petition and a counseled supplemental petition on May 26, 2015, and June 6, 2016, respectively. (ECF Nos. 16-14, 16-26.) The state district court denied the petition on January 31, 2017. (ECF No. 16-31.) Lopez appealed, and the Nevada Court of Appeals affirmed on January 9, 2018. (ECF No. 17-16.) Remittitur issued on February 5, 2018. (ECF No. 17-17.)

Lopez's pro se federal habeas petition was filed on March 15, 2018. (ECF No. 1.) The respondents moved to dismiss the petition on November 19, 2018. (ECF No. 13.) This court granted the motion in part, dismissing ground 3(a) to the extent it asserted ineffective assistance of appellate counsel; dismissing ground 3(b) to the extent it asserted appellate counsel was ineffective for failing to investigate, familiarize himself with discovery, file pretrial motions or "effect a sound strategy"; dismissing ground 3(c) to the extent it asserted ineffective assistance of appellate counsel; dismissing ground 3(d) except to the extent it asserted that appellate counsel was ineffective for failing to challenge the admission of the evidence relating to his accusers; and dismissing ground 3(e) except to the extent it asserted appellate counsel was ineffective for failing to challenge the admission or omission of jury instructions on appeal. (ECF No. 22.) The respondents answered the petition on November 25, 2019, and Lopez replied on January 30, 2020. (ECF Nos. 35, 38.)

In his remaining grounds for relief, Lopez raises the following violations of his federal constitutional rights:

1(a).   His trial counsel failed to relay an offer.
1(b).   His trial counsel failed to inform him that the state had offered a plea deal and/or failed to seek the possibility of a plea deal.
1(c).   His trial counsel lost his ability to receive a plea deal.

3

| | | |
|---|---|---|
| 2. | | The state improperly vouched for Navarro's credibility and made an argument intended to inflame the passions of the jury. |
| 3(a). | | His trial counsel failed to meet, confer or have any pretrial contact with him. |
| 3(b). | | His trial counsel failed to investigate, file pretrial motions, or familiarize himself with discovery. |
| 3(c). | | His trial counsel failed to challenge the photographic lineup. |
| 3(d). | | His trial and appellate counsel failed to challenge the admission of evidence relating to his accusers. |
| 3(e). | | His trial and appellate counsel failed to object to the admission and/or omission of jury instructions. |
| 3(f). | | His trial counsel failed to properly cross-examine the state's key witness at trial. |
| 3(g). | | There were cumulative errors. |
| 4. | | His appellate counsel erred in including grounds of ineffective assistance of counsel in his direct appeal. |

(ECF No. 1.)

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v.*

*Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III. DISCUSSION

With the exception of ground 2, Lopez alleges various ineffective-assistance-of-counsel claims in his petition. (*See* ECF No. 1 at 3-29.) In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advise." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). In other words, "prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* at 168. And when the ineffective assistance of counsel claim is based on appellate counsel's actions, a petitioner must show "that [appellate] counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them" and then "that, but for his [appellate] counsel's unreasonable failure to file a merits brief, [petitioner] would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal

quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### A.     Ground 1

In ground 1(a), Lopez argues that his trial counsel failed to relay a plea offer to him. (ECF No. 1 at 3.) Lopez elaborates that the state placed a proposed negotiation on the record at a pretrial conference, and although his trial counsel informed the state district court that he would confer with Lopez about the offer, his trial counsel failed to do so. (*Id.*) Relatedly, in ground 1(b), Lopez argues that his trial counsel failed to inform him that the state had made a plea offer and failed to seek the possibility of a plea deal. (*Id.* at 6.) And in ground 1(c), Lopez argues that his trial counsel caused the loss of the plea deal. (*Id.* at 9.) Lopez expounds in his reply brief that even if he was aware that an offer had been made, his trial counsel failed to fully explain the consequences of the offer, including the maximum and minimum sentences under the plea offer and the advantages and disadvantages of taking the offer. (ECF No. 38 at 5-6.) Lopez maintains that he would have accepted the plea offer if he had been given the chance to do so. (*Id.* at 8.)

In affirming the denial of Lopez's state habeas petition, the Nevada Court of Appeals held:

> Lopez argues his counsel was ineffective for failing to have a discussion with him regarding a plea offer. Lopez failed to demonstrate his counsel's performance was deficient or resulting prejudice. The record demonstrates shortly before the beginning of trial, Lopez's counsel and the State explained to the trial court the State had previously offered to dismiss the conspiracy to commit robbery charge and to forgo the habitual criminal enhancement in exchange for Lopez' guilty plea to robbery with the use of a deadly weapon, but Lopez had rejected that offer. Lopez' counsel explained to the trial court that Lopez rejected the plea offer

7

because Lopez also had a federal criminal case and a guilty plea to the State charge would have enhanced the penalties he faced in the federal court matter. Counsel asserted Lopez' federal case had since been resolved and counsel had approached the State to discuss a potential new plea deal, but the State had declined to negotiate the case at that point because it was ready for trial.

The district court concluded this discussion demonstrated Lopez' claim was belied by the record. *See Mann v. State*, 118 Nev. 351, 354, 46 P.3d 1228, 1230 (2002) ("A claim is 'belied' when it is contradicted or proven to be false by the record as it existed at the time the claim was made."). Substantial evidence supports the district court's conclusion in this regard. Accordingly, Lopez failed to demonstrate his counsel acted in an objectively unreasonable manner or a reasonable probability of a different outcome had counsel performed different actions with respect to the State's plea offer. Therefore, we conclude the district court did not err in denying this claim.

(ECF No. 17-16 at 3.) The Nevada Court of Appeal's rejection of Lopez's *Strickland* claims was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

At a pretrial conference held on October 17, 2012, the state represented that "the offer at this point would be robbery with a deadly weapon, right to argue. The State would not seek habitual criminal." (ECF No. 14-15 at 4.) The state district court asked Lopez's trial counsel if "that [was] something that [he] need[ed] to talk to Mr. Lopez about." (*Id.*) Lopez's trial counsel responded, "I will and our concern has always been that the State case trail behind the federal case for obvious reasons including enhancements that may occur." (*Id.*) Lopez was present at this hearing. (*Id.* at 3.)

A calendar call was held a month later on November 14, 2012. (ECF No. 14-17.) Lopez was again present. (*Id.* at 3.) At that hearing, Lopez's trial counsel requested a continuance of the trial date, explaining that Lopez "actually has a federal matter that's pending as well." (*Id.*) Lopez's trial counsel elaborated that Lopez's "Federal Public Defender just got replaced with a new Federal

Public Defender which has clouded up issues . . . in terms of trying to negotiate the federal case to

envelop the State case." (*Id.*)

At a second pretrial conference held on January 16, 2013, the following colloquy occurred:

| | |
|---|---|
| [Trial counsel]: | We've - - I've reviewed our discovery. At this point I don't think there's any discovery issues. I believe that they're - - the offer that we have on the table is an offer that actually contemplates what happens in his federal issue and I think that's the biggest problem. |
| THE COURT: | And - - |
| [Trial counsel]: | 'Cause I think we keep wanting to resolve that case first before we actually do anything in this case and so. |
| THE COURT: | And you've communicated that offer to him consistent with *Lafler*? |
| [Trial counsel]: | Mr. Lopez does understand that and at this point is - - we're just kind of sitting tight is what we're doing. |

(ECF No. 14-19 at 3-4.) Lopez was not present during this discussion. (*Id.* at 3.)

Another calendar call was held on February 13, 2013, and Lopez was present. (ECF No. 14-23 at 3.) Lopez's trial counsel again asked for a continuance, explaining that he desired for Lopez's federal case to "go first" because "that would resolve . . . a lot of issues here in this case; in that, [Lopez] is actually exposed to greater time if he takes this case first before taking the federal case." (*Id.*) The state district court declined the continuance request. (*Id.* at 4.)

On the first day of trial, February 19, 2013, Lopez's trial counsel stated that he "just found from [Lopez] today that [his federal] case ha[d] been resolved, he's taken a negotiation." (ECF No. 14-29 at 4.) Lopez's trial counsel then stated that he though he ought "to at least lay a record down as to any possible negotiations that were out there and the fact that we don't have a negotiation now." (*Id.*) Lopez's trial counsel continued: "In speaking with the State, I have asked

if we were to just plead to the charges, whether or not that would put him in a position where they would take the large habitual off the table, at least that argument, and the State has declined that because they are prepared to go forward with trial today." (*Id.*) The state then informed the state district court that it had previously "offered robbery with deadly weapon, right to argue, taking habitual off the table," but that it was its understanding that "the defendant rejected that offer" and it was not renewing it. (*Id.* at 5.) Lopez's trial counsel then explained that "the reason why that offer was rejected was because of the complications associated with the federal case in that if he were to take a deal there, it would enhance his criminal points in the federal system and then it would make things worse for him." (*Id.*)

As the Nevada Court of Appeals reasonably concluded, Lopez fails to demonstrate that his trial counsel acted deficiently. *Strickland*, 466 U.S. at 688. "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). However, as the Nevada Court of Appeals reasonably determined, the record belies Lopez's claim that his trial counsel failed to meet this duty. Indeed, Lopez was present during at a pretrial conference when the state announced its plea offer. (*See* ECF No. 14-15 at 3-4.) Thus, the plea offer was effectively communicated to Lopez.

Further, the Nevada Court of Appeals also reasonably concluded that Lopez failed to demonstrate prejudice. *Lafler*, 566 U.S. at 163, 168. Lopez's trial counsel explained throughout the pretrial proceedings that a plea deal was not reachable until Lopez's federal case was completed, and once that happened, the state had taken the plea deal off the table. (*See* ECF No. 14-15 at 4, ECF No. 14-19 at 3-4, ECF No. 14-23 at 3, ECF No. 14-29 at 4-5.) Lopez's trial counsel explained that Lopez was "actually exposed to greater time if he [resolved his state case] first

before taking the federal case." (ECF No. 14-23 at 3.) As the Nevada Court of Appeals appears to have reasonably determined, this fact belies Lopez's assertion that he would have accepted the state's offer at the time it was on the table. *See Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) (finding no prejudice where there was no "reasonable probability that at the time of the offer" the petitioner would have accepted the government's plea offer). Accordingly, because the Nevada Court of Appeals reasonably denied this claim, Lopez is denied federal relief for grounds 1(a), 1(b), and 1(c).

## B.    Ground 2

In ground 2, Lopez alleges that his federal constitutional rights were violated when the state argued that Navarro had no reason to lie. (ECF No. 1 at 12.) Lopez contends that this statement demonstrated that the state improperly vouched for Navarro's credibility, inflamed the passions of the jurors, and shifted the burden of proof to the defense to prove that Navarro had a reason or motive to lie. (*Id.* at 12-14.) In affirming Lopez's judgment of conviction, the Nevada Supreme Court held:

> Lopez contends that the State committed prosecutorial misconduct during closing arguments, vouched for the credibility of the victim, and shifted the burden of proof. Lopez failed to object during closing, and we review for plain error. NRS 178.602; *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Lopez has the burden of establishing that these errors occurred, *see Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008) (discussing prosecutorial misconduct); *Lisle v. State*, 113 Nev. 540, 553-54, 937 P.2d 473, 481 (1997) (discussing improper vouching and burden shifting), that the errors are plain or clear from the record, and that the errors affected his substantial rights, *Green*, 119 Nev. at 545, 80 P.3d at 95. In addition to making the statements which Lopez alleges violated his rights, the State specifically told the jury during closing arguments that "it's your job to determine [the victim's] credibility," and on rebuttal that, "we're going to let you decide how credible do you think that person is," and if the jury had any reasonable doubt about whether the victim lied, that "reasonable doubt entitled the Defendant to a not guilty verdict." Having reviewed the closing arguments in their entirety, we conclude that if there is any error, it is not plain or clear from the record, and Lopez has not demonstrated that it affected his substantial rights.

(ECF No. 16-9 at 3-4.) The Nevada Supreme Court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A court must judge the remarks "in the context in which they are made." *Boyde v. California*, 494 U.S. 370, 385 (1990). The fairness of a trial is measured "by considering, inter alia, (1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused." *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005). "[P]rosecutorial misconduct[ ] warrant[s] relief only if [it] 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

Lopez takes issue with the following comment made by the state during its closing rebuttal argument: "you cannot reward this defendant because he committed his crime under the cover of darkness. You cannot do that. Christian Navarro had no reason whatsoever to lie to you." (ECF No. 15-1 at 78.) Lopez first argues that this comment amounted to the state improperly vouching for Navarro. Vouching is prohibited because a prosecutor's opinion "carr[ies] much weight." *Berger v. United States*, 295 U.S. 78, 89 (1935); *see also United States v. Young*, 470 U.S. 1, 18-19 (1985) ("[T]he prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.").

Several factors are assessed in determining whether there was improper vouching: "the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall." *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993).

An assessment of these factors shows: (1) the alleged vouching was a comment made during closing argument; (2) the alleged vouching did not imply that the state had extra-record knowledge; (3) there was no inference that Navarro's veracity was being monitored; (4) the degree of personal opinion was low, as the state did not explicitly state that it believed Navarro was telling the truth; (5) Navarro's credibility was questioned by Lopez's trial counsel during his closing argument[2]; the jury was instructed that "[s]tatements, arguments and opinions of counsel are not evidence in the case" (ECF No. 15-2 at 8)[3]; and Navarro's testimony was important to the state's case. Although this court is aware that Navarro's testimony and credibility were crucial, the remainder of the factors point to a determination that the state's comment did not amount to improper vouching. Indeed, the state was merely arguing that Navarro's identification of Lopez was sound and should not be found to be unreliable simply because the attack happened at night— an argument that the state had to make in order to support its case. *See Necoechea* 986 F.2d at

---

[2] Lopez's trial counsel appears to have argued that Navarro could not properly identify his attacker due to the area being poorly lit. (*See* ECF No. 15-1 at 70-71.)

[3] The jury was also instructed that "[t]he credibility or believability of a witness should be determined by his manner upon the stand, his relationship to the parties, his fears, motives, interests or feelings, his opportunity to have observed the matter to which he testified, the reasonableness of his statements and the strength or weakness of his recollections." (ECF No. 15-2 at 9.)

1279 ("The prosecutor merely argued that [the witness] was telling the truth, an argument the prosecutor had to make in order to convict [the defendant]. These statements do not imply that the government is assuring [the witness]'s veracity, and do not reflect the prosecutor's personal beliefs.").

Lopez next argues that the state's comment inflamed the passions of the jurors. The Ninth Circuit Court of Appeals has "consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury." *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005); *see also United States v. Nobari*, 574 F.3d 1065, 1077 (9th Cir. 2009) (finding that "[t]he prosecution's comment was an improper appeal to jurors' emotions and fears"). It cannot be concluded that the state's foregoing comment violates this admonishment.

Lastly, Lopez argues that the state's comment shifted the burden of proof. The state is prohibited from using burden-shifting that relieves it of its burden of proving every element beyond a reasonable doubt. *See Sandstrom v. Montana*, 442 U.S. 510, 520-24 (1979); *see also In re Winship*, 397 U.S. 358, 364 (1970) (holding that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). However, again, it cannot be concluded that the state's foregoing comment amounted to burden-shifting. Judging this comment "in the context in which [it] was made," *Boyde*, 494 U.S. at 385, it appears that the state was merely rebutting Lopez's trial counsel's insinuation that Navarro's identification was doubtful due to the time of day that the attack occurred. *See United States v. Lopez-Alvarez*, 970 F.2d 583, 597 (9th Cir. 1992) ("[T]he propriety of the prosecutor's remarks must be judged in relation to what would constitute a fair response to the remarks of defense counsel."). Further, as the Nevada Supreme Court reasonably noted, the state also commented that "we're going to let you decide how credible do

you think that person is," and that "[i]t's your job to determine [Navarro's] credibility." (ECF No. 15-1 at 68, 81.) The state even went so far as to comment, "Do you have any reasonable doubt that he would get up here and lie to you, any reasonable doubt in mind whatsoever? If so, hey a reasonable doubt entitles the Defendant to a not guilty verdict." (*Id.* at 81.) Finally, the jury was instructed that Lopez "is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the Defendant is the person who committed the offense." (ECF No. 15-2 at 6.)

Because Lopez fails to demonstrate that the state's comment amounted to prosecutorial misconduct, *Darden*, 477 U.S. at 181, the Nevada Supreme Court reasonably denied Lopez's claim. As such, Lopez is denied federal habeas relief.

## C. Ground 3

In ground 3, Lopez alleges various violations made by his trial and appellate counsel. (*See* ECF No. 1 at 17.)

### 1. Ground 3(a)

In ground 3(a), Lopez alleges that his trial counsel failed to meet, confer, or have any pretrial contact with him.[4] (ECF No. 1 at 19.) In affirming Lopez's judgment of conviction, the Nevada Supreme Court held:

> Lopez contends that he was denied his Sixth Amendment right to counsel because counsel did not visit him while he was in federal custody before trial. Other than citing to the Sixth Amendment of the United States Constitution, Lopez does not cite any other authority to support this proposition. Furthermore, the brief statements of Lopez and his counsel which are cited by Lopez in his opening brief do not necessarily demonstrate that there was no contact or communication between Lopez and his counsel while he was in federal custody. The record demonstrates

---

[4] This court previously concluded that ground 3(a) was dismissed to the extent it asserts ineffective assistance of appellant counsel. (ECF No. 22 at 4.)

that Lopez was represented by counsel throughout his trial and at a number of pretrial proceedings and we cannot say, based on the record and argument before this court, that Lopez was denied his Sixth Amendment right to counsel.

(ECF No. 16-9 at 2.) The Nevada Supreme Court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Defense counsel has a duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments." *Strickland*, 466 U.S. at 688. Lopez fails to demonstrate that his trial counsel did not meet these consultation duties. It appears from this court's review of the record that communication between Lopez and his trial counsel may have been limited. However, it appears that any reduction or difficulty in communication was a result of Lopez's federal criminal case, not due to Lopez's trial counsel's failure to consult. Indeed, on the first day of trial, Lopez informed the state district court that he was unprepared because he believed he was just being brought to the courthouse for a calendar call. (ECF No. 14-29 at 5-6.) The state district court asked Lopez if his trial counsel had talked to him following the calendar call at the end of the previous week, and Lopez said, "no." (*Id.* at 7.) Lopez's trial counsel then explained that "[t]he reason for that is because of the fact that he's in federal custody," and "[i]t's a different visiting standard." (*Id.*)

Thus, although Lopez may have wished to meet with his trial counsel on more occasions, it cannot be concluded, based on the record, that Lopez's trial counsel acted deficiently. *Strickland*, 466 U.S. at 688; *see also Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("[R]eject[ing] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel."). Because the Nevada Supreme Court reasonably denied Lopez's claim, Lopez is denied federal habeas relief for ground 3(a).

### 2.     Grounds 3(b) through 3(g)

In ground 3(b) through 3(g), Lopez alleges more ineffective-assistance-of-counsel claims. (*See* ECF No. 1 at 20-27.) None of these claims were explicitly discussed by the Nevada Court of Appeals in its affirmation of the denial of Lopez's state habeas petition. (*See* ECF No. 17-16.) However, the Nevada Court of Appeal held:

> Lopez argues the district court erred in denying the petition without conducting an evidentiary hearing. To warrant an evidentiary hearing, a petitioner must raise claims supported by specific allegations not belied by the record, and if true, would entitle him to relief. *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). The district court concluded Lopez' claims failed to meet that standard and the record before this court reveals the district court's conclusion in this regard was proper.

(*Id.* at 4.) In dismissing the respondents' argument that grounds 3(b) through 3(g) were unexhausted, this court determined that the foregoing holding demonstrated that "the Nevada Court of Appeals . . . ruled on the merits of all the claims." (ECF No. 22 at 3.) Because the Nevada Supreme Court's opinion "does not come accompanied with [the] reasons" why it denied the claims outlined in grounds 3(b) through 3(g), this court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018). This court "then presume[s] that the unexplained decision adopted the same reasoning." *Id.*

### a.     Ground 3(b)

In ground 3(b), Lopez alleges that his trial counsel failed to investigate, file pretrial motions, familiarize himself with discovery and "effect sound strategy where one existed."[5] (ECF No. 1 at 20.) Lopez contends that detectives had evidence of other suspects who had been

---

[5] This court previously concluded that ground 3(b) was "dismissed to the extent it asserts that appellant counsel should have filed pretrial motions, investigated, effected a sound strategy or familiarize himself with discovery." (ECF No. 22 at 5.)

committing robberies in the area, but his trial counsel failed to investigate or bring any of this evidence forth at trial. (*Id.*) Lopez also contends that his trial counsel failed to investigate a surveillance videotape showing the sale of Navarro's cellphone. (*Id.*) Regarding pretrial motions, Lopez asserts that his trial counsel should have contested the conspiracy charge because there was "no significant documentary and/or corroborative evidence . . . to sustain a charge of conspiracy." (*Id.* at 21-22.) Finally, Lopez alleges that his appellate counsel failed to challenge his convictions under a sufficiency or the evidence theory and on double jeopardy grounds. (*Id.* at 21.)

In denying Lopez's state habeas petition, the state district court held:

> Petitioner alleges that counsel was ineffective for failing to investigate numerous issues and for failing to file pretrial motions. Specifically, Petitioner claims that counsel failed to investigate evidence of other suspects who had allegedly been committing robberies in the area, that counsel failed to investigate a video tape, and that counsel failed to file a motion to dismiss the conspiracy count.
>
> Petitioner has presented this Court with nothing other than his self-serving statement in support of his contention that police had evidence of other suspects or that counsel failed to investigate the alleged evidence. Likewise Petitioner has presented this Court with no evidence showing how the videotape in this case would have been exculpatory. A defendant who contends that his attorney was ineffective because he did not adequately investigate must show how a better investigation would have rendered a more favorable outcome probable. *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Here, Petitioner cannot show that further investigation would have rendered a more favorable outcome, especially in light of the fact that he was identified by the victim as the perpetrator of the robbery. Accordingly, Petitioner's claim is denied.
>
> Petitioner contends that counsel was ineffective for failing to file a motion to dismiss the conspiracy count. However, Petitioner fails to demonstrate that counsel's performance was deficient or that he was prejudiced by counsel's alleged deficient performance. Here, any motion to dismiss the Conspiracy to Commit Robbery count would have been futile. The victim identified Petitioner as the perpetrator of the robbery during the preliminary hearing. There was also evidence that an unidentified man assisted Petitioner in committing the crime. Accordingly, there was sufficient probable cause to bind over the conspiracy count. *See* NRS 171.206 (providing that the magistrate shall bind a defendant over to the district court if there is probable cause to believe that an offense has been committed and the defendant has committed it); *State v. White*, 130 Nev. ___, ___, 330 P.3d 482, 486 (2014) (probable cause established by showing "slight, even marginal

evidence"). Thus, a motion to dismiss on this basis would have been futile, and counsel cannot be deemed ineffective for failing to file a futile motion. *See Ennis*, 122 Nev. at 706, 137 P.3d at 1103. Accordingly, Petitioner's claim is denied.

(ECF No. 16-31 at 6-7.) The state district court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Turning first to Lopez's contention that his trial counsel failed to investigate, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Additionally, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* First, Lopez asserts that his trial failed to investigate evidence of other suspects. However, as the state district court reasonably concluded, Lopez fails to support this assertion with any evidence beyond his self-serving statements. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney" acted the way the petitioner alleged). Second, Lopez asserts that his trial counsel should have investigated the Stratosphere Hotel surveillance footage.[6] However, because Detective Spiotto testified that the Stratosphere Hotel surveillance footage did not confirm where Bell had obtained Navarro's cellular telephone (ECF No. 15-1 at 28), it is unclear what Lopez's trial counsel would have gained from investigating further. Thus, Lopez's trial counsel's decision to not investigate the surveillance footage was reasonable. *Strickland*, 466 U.S. at 691.

---

[6] To the extent that Lopez contends that his trial counsel should have investigated or interviewed Bell or Ivan Barraza, Bell's boyfriend, this issue will be discussed in ground 3(d).

Turning next to Lopez's contention that his trial counsel failed to file a pretrial motion challenging the conspiracy count, Navarro testified at the preliminary hearing that "two people came up after" him after he parked his car at his apartment complex. (ECF No. 14-1 at 2.) Then "[t]hey pulled a gun on [him] and told [him] in Spanish to basically to drop everything on the ground." (*Id.* at 3.) Navarro "did what he told [him] to do," and after the man without the gun grabbed Navarro's belongings, Navarro "turned around and walked away" as instructed. (*Id.*) Navarro identified Lopez as the man with the gun. (*Id.*) As the state district court reasonably concluded, given these facts, Lopez fails to demonstrate that there was insufficient probable cause demonstrating that he "conspire[d] to commit . . . robbery." Nev. Rev. Stat. § 199.480 (defining conspiracy); s*ee also* Nev. Rev. Stat. § 171.206 ("If from the evidence it appears to the magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold the defendant to answer in the district court."); *see also Kinsey v. Sheriff*, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971) ("To commit an accused for trial, the State is not required to negate all inferences which might explain his conduct, but only to present enough evidence to support a reasonable inference that the accused committed the offense."). As such, Lopez fails to demonstrate that his trial counsel was deficient for not moving to dismiss the conspiracy count prior to the trial. *Strickland*, 466 U.S. at 688.

Turning now to Lopez's contention that his trial counsel failed to familiarize himself with discovery, Lopez's trial counsel reported at a pretrial conference that he had "reviewed our discovery," and did not "think there's any discovery issues." (ECF No. 14-19 at 3.) Because Lopez's contention is belied by the record, he fails to demonstrate that his trial counsel was deficient. *Strickland*, 466 U.S. at 688.

Turning finally to Lopez's claims regarding his appellate counsel, Lopez's conclusory allegation regarding a double jeopardy violation fails to provide a basis for relief. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995). And his argument that his appellate counsel failed to challenge his convictions under a sufficiency of the evidence theory also fails. Lopez alleges that "there was never any evidence introduced to suggest that [he] conspired with anyone as no one else was ever detained nor was there any evidence to support a weapon charge" because a weapon was never recovered. Nevada law does not require that a co-conspirator be charged for a conspiracy conviction to stand and does not require a weapon be recovered for a deadly weapon enhancement to stand. *See Doyle v. State*, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996) ("A conspiracy is an agreement between two or more persons for an unlawful purpose," which may be established by direct or circumstantial evidence), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004); *see also Harrison v. State*, 96 Nev. 347, 351, 608 P.2d 1107, 1110 (1980) (explaining that "[t]he testimony of the victim describing the gun carried by Harrison during the robbery was sufficient to support the conviction" of robbery with the use of a deadly weapon). Accordingly, Lopez fails to demonstrate that he would have prevailed on appeal had his appellate counsel included a sufficiency of the evidence claim. *Smith*, 528 U.S. at 285.

Because the state district court reasonably denied Lopez's claims, Lopez is denied federal habeas relief for ground 3(b).

### b. Ground 3(c)

Lopez alleges that his trial counsel should have moved to suppress the photographic lineup because he was denied his right to counsel at that lineup.[7] (ECF No. 1 at 22-23.) Lopez also asserts

---

[7] This court previously concluded that ground 3(c) was "dismissed as to any claim of ineffective assistance of appellate counsel." (ECF No. 22 at 5.)

that the lineup was unnecessarily suggestive because it "involv[ed] details of prior robberies," and Navarro described his assailant's teeth as being messed up, which does not match the description of his teeth. (*Id.*) In denying Lopez's state habeas petition, the state district court held:

> Petitioner contends that counsel was ineffective for failing to file a motion to suppress improper identification evidence. Petitioner argues that he was denied counsel when officers conducted a photographic lineup on May 20, 2012. However, Petitioner was not entitled to counsel during this stage of the proceedings.
>
> Petitioner has failed to show that counsel's failure to move to suppress the results of the photographic lineup constituted deficient performance. The Nevada Supreme Court has previously held that a lack of counsel at a photographic lineup conducted before the commencement of any prosecution does not infringe upon a defendant's constitutional rights. *See Reed v. Warden*, 89 Nev. 141, 508 P.2d 2 (1973); *Baker v. State*, 88 Nev. 369, 498 P.2d 1310 (1972). Here, the photographic lineup was conducted on May 20, 2012. Reporter's Tr. Proceedings, February 20, 2013, at 33. The Information charging Petitioner was not filed until June 11, 2012. Accordingly, Petitioner was not entitled to counsel when officers conducted the photographic lineup. Counsel cannot be ineffective for failing to make futile objections or arguments. *Ennis*, 122 Nev. at 706, 137 P.3d at 1103
>
> Petitioner also suggest[s] that the photographic lineup was improperly suggestive. However, Petitioner provides this Court with no facts demonstrating that the lineup was improperly suggestive. In support of this contention Petitioner states that his teeth were not "jacked up" as described by the victim. However, this single contention does not demonstrate that the lineup was improper. Petitioner's claim is a naked assertion and does not entitle him to relief. *See Hargrove*, 100 Nev. at 502, 686 P.2d at 225.
>
> Furthermore, Petitioner cannot demonstrate that he was prejudiced by counsel's decision not to challenge the lineup. As discussed above, any motion counsel would have filed would have been denied. Accordingly, Petitioner cannot show that the result of the trial would have been different had the motion been filed. Additionally, the victim was able to identify Petitioner as the perpetrator of the crime in open court rendering the evidence of the photographic lineup cumulative. As such, Petitioner's claim is denied.

(ECF No. 16-31 at 7-8.) The state district court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

First, regarding Lopez's argument that his trial counsel should have moved to suppress Navarro's identification because Lopez was not afforded counsel at the lineup, it has been "well settled" that "[t]he Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (internal quotation marks omitted). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Id.*; *see also United States v. Ash*, 413 U.S. 300, 321 (1973) ("[T]he Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender."); *Reed v. Warden*, 89 Nev. 141, 143, 508 P.2d 2, 3 (1973) (explaining that "there is no constitutional right to counsel at an identification lineup conducted before commencement of any prosecution"). Here, the photographic lineup was made by Detective Spiotto and shown to Navarro on May 20, 2012. (ECF No. 15-1 at 31, 34.) After Navarro identified Lopez, Detective Spiotto "went back upstairs to [his] office and began paperwork to book Mr. Lopez for the robbery." (*Id.* at 36.) Lopez was arrested the next day, May 21, 2012, and a criminal complaint was filed in Justice Court, Las Vegas Township on May 23, 2012. (ECF Nos. 14-2 at 4, 14, 17.) Although it is true that Lopez was "arrested on an unrelated charge" on May 12, 2012 (*see id.* at 16), Lopez had not been arrested on the charges at hand at the time Navarro was shown the photographic lineup. Accordingly, because Lopez was not guaranteed counsel at the pre-arrest photographic lineup, the state district court reasonably concluded that his trial counsel did not act deficiently in not moving to suppress the lineup on that basis, as such a motion would not have been meritorious. *Strickland*, 466 U.S. at 688; *see also Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) ("[P]etitioner must show that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable probability that the jury would have reached a

different verdict absent the introduction of the unlawful evidence." (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Turning next to Lopez's contention that the photographic lineup with unnecessarily suggestive, in order "[t]o constitute a due process violation, the photographic identification procedure must be so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Denham v. Deeds*, 954 F.2d 1501, 1504 (9th Cir. 1992); *see also Simmons v. United States*, 390 U.S. 377, 384 (1968) (holding that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"). Here, Detective Spiotto testified that he developed a "six pack," which is "six pictures of similar looking people," to show Navarro. (ECF No. 15-1 at 30.) In this case, the photographic lineup was made up of Hispanic males, and from 200 pictures generated by a computer, Detective Spiotto picked five "fillers" who had "similar . . . physical characteristics" as Lopez. (*Id.* at 30, 45.) Before showing the photographic lineup to Navarro, Detective Spiotto read and showed Navarro the "photo lineup witness instructions." (*Id.* at 33.) Navarro acknowledged that he understood those instructions before picking Lopez out of the photographic lineup "[w]ithin a minute or so." (*Id.* at 34-35.)

As the state district court reasonably determined, Lopez fails to articulate why this photographic lineup was impermissibly suggestive. *See Jones*, 66 F.3d at 205. Lopez's contention that the lineup "involv[ed] details of prior robberies" is unsupported. And Lopez fails to explain how Navarro's description of the assailant's bad teeth made the lineup impermissibly suggestive, especially since Lopez's assertion that he has fine teeth would have distinguished him from the assailant. Moreover, Lopez's trial counsel asked Detective Spiotto about his interpretation of

"[j]acked up teeth" in the context of putting the photographic lineup together. (*See* ECF No. 15-1 at 43-45.) This would have highlighted any error regarding the teeth issue for the jury to assess. *See Simmons*, 390 U.S. at 384 ("The danger that use of the technique [of using photographs for initial identification] may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."); *see also Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."). Because the state district court reasonably denied Lopez's claim, Lopez is denied federal habeas relief for ground 3(c).

### c.      Ground 3(d)

In ground 3(d), Lopez alleges that his trial and appellate counsel failed to challenge the admission of the evidence relating to his accusers. (ECF No. 1 at 25.) Specifically, Lopez asserts that his counsel should have called Bell, the woman who pawned Navarro's cellular telephone, or Ivan Barazza, Bell's boyfriend, as witnesses to "establish[ ] that Bell had never met [him], nor received the stolen phone from [him]." (ECF No. 38 at 15.) In denying Lopez's state habeas petition, the state district court held:

> Petitioner next alleges that counsel was ineffective for failing to call Talena Bell or her boyfriend, Ivan Barreza, at trial. Petitioner alleges that these witnesses would have been able to corroborate where the stolen phone came from in light of the fact that Ms. Bell first told the Detective a lie about where she got the phone.
>
> Petitioner is unable to show that trial counsel's decision to not call these witnesses constituted deficient performance. Trial counsel made a strategic decision not to call these witnesses at trial. Ms. Bell told officers that she received the victim's stolen cellphone from Petitioner. Had counsel called these witnesses at trial it would have provided further evidence of Petitioner's guilt. Therefore, counsel made a strategic decision, which is virtually unchallengeable on review, not to call these witnesses, and thus his performance was not deficient. *See Dawson v. State*, 108 Nev. 112, 117, 825 P.2d 593, 596 (1992); *see also Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989).

Additionally, Petitioner cannot show that the result of the trial would have been different had these witnesses testified. As discussed *supra*, these witnesses would have only provided further evidence of Petitioner's guilt. As such, Petitioner has failed to demonstrate the requisite prejudice as required by *Strickland*, and his claim is therefore denied.

(ECF No. 16-31 at 9-10.) The state district court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Following the selection of the jury, Lopez's trial counsel explained the following to the state district court:

This particular case has a little bit of a twist to it, which is a twist that the State's waiting for me to make a bad move on, and that is this. My client was actually in custody and had been the target of an investigation involving other robberies in this particular case. The testimony is, is that the victim sees my client and can identify him by a jacket that he was wearing. Detective that's involved in the case kinda [sic] sends out that broad, hey, does anyone know anything about this; somebody responds and says, hey, I got another case involving that same type of jacket, and then six packets put together and so forth.

We kinda [sic] wanted to let the Court know that if - - just to kinda [sic] be wary of where I'm going to be going with it because if, for some reason, I traverse into that area - - where we'll of course approach, but wanted to let you know beforehand that that's kind of - - the danger zone in this entire case is based upon that.

(ECF No. 32-1 at 136.) The following colloquy then took place:

| | |
|---|---|
| THE COURT: | Okay. Can't you just leave it out that - - |
| [TRIAL COUNSEL]: | I believe - - |
| THE COURT: | I mean, did - - can't you just - - can't we just go - - I don't know why you'd want to bring it in, but maybe I'm missing something. |
| [TRIAL COUNSEL]: | No, no, I'm not gonna [sic] bring it at all. |
| THE COURT: | 'Cause otherwise you can just say - - and, you know, did you put together a photo lineup, and did you |

| | |
|---|---|
| | show it to anybody, and, you know, you don't have to get to how this person was developed as a suspect. |
| [TRIAL COUNSEL]: | That's - - I agree with that, Your Honor. I know that the State has advised their witnesses not to talk about that particular issue, but - - |
| THE COURT: | Right. |
| [THE STATE]: | Well, we have to an extent. I mean, I think it's fair that we ask the detective: Hey, did you talk to a couple people, and did you get information that they were familiar [sic] this particular person? |
| THE COURT: | No, because that's - - |
| [THE STATE]: | Not through - - |
| THE COURT: | No, I mean you can say this. You can say: Well, were you able to develop a suspect? And, you know, and then: Did you put together a photographic lineup, you know, with various photos of people who look like that or fit that general description? Yes, 'cause if you say - - I mean, if you say - - you can just do it generally through your investigation. But if you say: Well, did you talk to other police officers, and they pointed you to this guy? The jury's gonna be thinking, well, why was this guy known to other police officers. So you would have to do it in a more generic way to just suggest they knew him from, you know, the neighborhood, or they knew him - - 'cause otherwise, well, how would he be known? He would be known as a criminal. So that would be overly prejudicial. So, I mean, you can do it in a way to, you know, suggest, well, you did, you know, through your investigation did you determine a suspect or something like that to suggest that the police aren't just willy-nilly putting people in a lineup and then, you know, did you develop a lineup based on that information, or something like that. |
| [THE STATE]: | Got it. |
| [THE COURT]: | Now, [Lopez's trial counsel], since we are precluding the State from getting into what the investigation was, then you obviously can't cross- |

27

| | | |
|---|---|---|
| 1 | | examine the police officer to suggest that somehow he was targeting the wrong person or was slipshod in |
| 2 | | making this person a suspect because then you're gonna [sic] open the door to the whole jacket thing. |
| 3 | | So just be wary of that, I mean. |
| 4 | [TRIAL COUNSEL]: | I think I still have some opportunity to cross-examine the detective on what he did in the investigation |
| 5 | | outside of talking to other people. |
| 6 | THE COURT: | Well, you can do it this way. I mean, I don't know what you're planning on doing. Just be mindful that |
| 7 | | if you go into that whole thing, how did you develop him as a suspect, then we're gonna [sic] get into the |
| 8 | | jacket, so don't open that door. Of course you can say: Well, you weren't able to take fingerprints. And |
| 9 | | you weren't able to do, you know - - |
| 10 | [TRIAL COUNSEL]: | Photographs and - - |
| 11 | THE COURT: | You know, you didn't photograph the scene and - - |
| 12 | [TRIAL COUNSEL]: | Correct. |
| 13 | THE COURT: | - - you didn't scrape DNA off the victim's head or whatever you want to ask. That wouldn't open the |
| 14 | | door. But just be aware that you're gonna [sic] have to do that in a relatively pointed - - it's cross. |
| 15 | [TRIAL COUNSEL]: | Correct. |
| 16 | | |
| 17 | THE COURT: | So you can. So that would, in my view, if, you know, if you said, well, fingerprints weren't recovered, true, |
| 18 | | you know, DNA wasn't taken, true, that doesn't open the door. But if you to suggest in more broad strokes |
| 19 | | what did you do, then it's gonna [sic] get into the jacket, and - - |
| 20 | [TRIAL COUNSEL]: | I agree with that. |
| 21 | THE COURT: | - - you've opened [sic] door. Okay? |
| 22 | (*Id.* at 136-38.) | |
| 23 | | |

Later, during the state's examination of Detective Spiotto, the following discussion occurred:

Q.      Okay. Now I'm going to ask you this, is it common for stolen property to change hands?

A.      I would say yes.

Q.      Okay. Well put it this way, was the description of the suspects given to you, was it a female?

A.      No.

Q.      So that didn't match up?

A.      Correct.

Q.      So you knew she must have gotten the phone from somewhere?

A.      Yes.

Q.      Okay. When you made contact with her the second time basically confronting her what - - without telling me what she says, do you have a conversation with her?

A.      Yes. And the story - -

Q.      Well without telling me what she says. We can't get into that. Based on your conversation with Telana, do you develop someone as a suspect?

A.      Yes, I do.

Q.      Who is that person?

A.      That's Alexander Lopez.

(ECF No. 15-1 at 29.) And during Lopez's trial counsel's cross-examination of Detective Spiotto, Lopez's trial counsel asked if it would be fair to say that the "phone wasn't given to [Bell] by [Lopez]." (ECF No. 15-1 at 42.) The state asked for a bench conference, and Lopez's trial counsel moved to another line of questioning. (*Id.* at 43.)

It is difficult to assess why Lopez's trial counsel decided to not call Bell or Barreza as witnesses because a post-conviction evidentiary hearing was not held.[8] However, this court's review of the record supports the state district court's conclusion that Lopez's trial counsel did not act deficiently in not doing so. *Strickland*, 466 U.S. at 688. As Lopez's trial counsel explained to the state district court before the presentation of evidence, Lopez was being investigated for other robberies. (*See* ECF No. 32-1 at 136.) And Detective Spiotto learned that the jacket his suspect was wearing at the time of the Navarro robbery matched the jacket worn by Lopez at those other robberies. (*See id.*) Lopez's trial counsel reasonably did not want this evidence admitted at trial, so he was cautioned by the state district court to not "open the door to the whole jacket thing" by inquiring generally how Lopez was developed as a suspect. (*Id.* at 136-38.)

It is unclear what Bell or Barazza's testimonies would have been without a post-conviction evidentiary hearing, but it appears that their testimonies would have opened the door to the state introducing evidence of the other robberies. Indeed, the state restricted Detective Spiotto from testifying about Bell's second explanation detailing how she acquired the stolen cellular telephone, explaining "[w]e can't get into that." (ECF No. 15-1 at 29.) And when Lopez's trial counsel tried to asked Detective Spiotto about who Bell acquired the cellular telephone from on cross-examination, Lopez's trial counsel was forced to withdraw the question following a bench conference. (*See id.* at 43.) Because it was reasonable to want to keep evidence of the other robberies out of Lopez's trial and because calling Bell or Barazza to testify would have likely

_____

[8] Although this court can assess Lopez's petition with the current record, it is perplexing that the state district court did not conduct a post-conviction evidentiary hearing before denying Lopez's state habeas petition, especially since the Nevada Supreme Court declined to consider Lopez's ineffective-assistance-of-trial-counsel claims in his appeal of his judgment of conviction because "an evidentiary hearing is necessary to substantiate Lopez's factual allegations." (ECF No. 16-9 at 3.)

opened the door to that evidence, Lopez fails to demonstrate that his trial counsel acted deficiently in not calling them as witnesses. *Strickland*, 466 U.S. at 688. For these reasons, Lopez also fails to demonstrate that his appellate counsel acted deficiently by not including this claim in his direct appeal. *Smith*, 528 U.S. at 285. Lopez is denied federal habeas relief for ground 3(d).

### d.      Ground 3(e)

In ground 3(e), Lopez alleges that his trial counsel should have requested a jury instruction stating the elements required "to subject an unarmed offender to a deadly weapon enhancement" because it was never established "1) who was in possession of the weapon held on the victim, 2) who the defendant was supposed to have conspired with, and . . . 3) if the defendant had prior knowledge that his (unapprehended) co-conspirator had a weapon."  (ECF No. 1 at 26 (citing *Brooks v. State*, 124 Nev. 203, 180 P.3d 657 (2008)). Lopez also alleges that his appellate counsel should have challenged this error in his direct appeal. (*Id.*) In denying Lopez's state habeas petition, the state district court held:

> Petitioner alleges that counsel was ineffective for failing to object to the admission and/or omission of jury instructions. Petitioner does not state which instructions were improper, nor does he state any legal or factual basis supporting his contention. Accordingly, this is a naked claim suitable only for summary rejection. *See Hargrove*, 100 Nev. at 502, 686 P.2d at 225. Petitioner seems to be arguing that there was insufficient evidence to support his conviction. However, this is an argument that should have been made on direct appeal and is thus waived. *See Franklin v. State*, 110 Nev. 750, 752, 877 P.2d 1058, 1059 (1994) (disapproved on other grounds by *Thomas v. State*, 115 Nev. 148, 979 P.2d 222 (1999)).

(ECF No. 16-31 at 10.) The state district court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

The Nevada Supreme Court has held that "an unarmed offender 'uses' a deadly weapon . . . when the unarmed offender is liable as a principal . . . , another principal to the offense

is armed with and uses a deadly weapon . . . , and the unarmed offender had knowledge of the use of the deadly weapon." *Brooks*, 124 Nev. at 210, 180 P.3d at 661. However, importantly, Lopez was not the unarmed offender. Indeed, Navarro clearly testified that Lopez was the assailant who pointed the gun at him. (*See* ECF No. 32-1 at 158-59.) Therefore, there was no basis for Lopez's trial counsel to have requested an additional instruction to the deadly weapon instruction already given or basis for his appellate counsel to have raised this issue in his direct appeal. (*See* ECF No. 15-2 at 20 (instructing the jury that "[i]f more than one person commits a robbery, and one of them uses a deadly weapon in the commission of that robbery, each may be convicted of Robbery With Use of a Deadly Weapon, even though he did not personally himself use the weapon").) Because Lopez fails to demonstrate that his trial counsel or appellate counsel acted deficiently, *Strickland*, 466 U.S. at 688; *Smith*, 528 U.S. at 285, the state district court reasonably denied Lopez's claim. Thus, Lopez is denied federal habeas relief for ground 3(e).

### e. Ground 3(f)

In ground 3(f), Lopez alleges that his trial counsel failed to properly cross-examine the state's key witness at trial. (ECF No. 1 at 26.) Lopez elaborates that his trial counsel should have "called Telana Bell and/or Ivan Barraza to testify to the fact of where the phone was obtained and by whom." (*Id.*) In denying Lopez's state habeas petition, the state district court held:

> Petitioner argues that counsel was ineffective for failing to properly cross-examine the State's key witnesses during trial. Specifically, Petitioner argues that counsel should have interviewed Ms. Bell and Ms. Barreza and had them testify at trial. This issue is merely a regurgitation of Petitioner's argument that counsel was ineffective for failing to call these witnesses at trial. As discussed above, Petitioner was not able to establish deficient performance nor prejudice with respect to this claim. Accordingly, Petitioner is not entitled to relief.

(ECF No. 16-31 at 10-11.) This ruling was reasonable. As the state district court reasonably noted, Lopez fails to articulate how this ground differs from ground 3(d), which this court already concluded lacks merit. Therefore, Lopez is denied federal habeas relief for ground 3(f).

### f.     Ground 3(g)

In ground 3(g), Lopez alleges that his federal constitutional rights were violated by the cumulative effect of his trial and appellate counsel's errors. (ECF No. 1 at 27.) Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This court has not identified any definite errors on the part of Lopez's trial or appellate counsel, so there are no errors to cumulate. Lopez is denied federal habeas relief for ground 3(g).

### D.     Ground 4

In ground 4, Lopez alleges that his federal constitutional rights were violated because his appellate counsel improperly including ineffective-assistance-of-counsel claims in his direct appeal. (ECF No. 1 at 29.) As was the case with grounds 3(b) through 3(g), the Nevada Court of Appeals did not specifically address this claim. (*See* ECF No. 17-16 at 4; ECF No. 22 at 3.) Thus, again, this court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "then presume[s] that the unexplained decision adopted the same reasoning." *Wilson*, 138 S.Ct. at 1192. In denying Lopez's state habeas petition, the state district court held:

Petitioner asserts that appellate counsel was ineffective for arguing ineffective assistance of trial counsel in his direct appeal to the Nevada Supreme Court. In his direct appeal, Petitioner raised allegations that he was denied counsel, that he received ineffective assistance of counsel, and that the State committed prosecutorial misconduct during closing arguments. While the Nevada Supreme Court declined to entertain the ineffective assistance of counsel, it considered Petitioner's other arguments and denied them on the merits. *See Lopez v. State*, No. 63462 Order of Affirmance, (July 22, 2014). Accordingly, Petitioner cannot show that he was prejudiced by counsel's decision to raise the ineffective assistance of counsel claim on appeal. Petitioner has failed to satisfy the second prong of *Strickland* and is thus not entitled to relief.

(ECF No. 16-31 at 11.) The state district court's rejection of Lopez's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Lopez's appellate counsel included an ineffective-assistance-of-trial-counsel claim in his direct appeal. (*See* ECF No. 16-3 at 13.) Lopez's appellate counsel explained, that "[w]hile claims of ineffective assistance of counsel are usually brought by way of a Petition for Writ of Habeas Corpus," it can be raised on direct appeal "when it appears from the record . . . that counsel has been ineffective and evidence from outside the record is not needed in order to prove this claim." (*Id.*) And in his reply brief on direct appeal, Lopez's trial counsel expounded that "an evidentiary hearing would add nothing to the record in this case," so the Nevada Supreme Court "should consider this issue on appeal." (ECF No. 16-7 at 9-10.) The Nevada Supreme Court disagreed, holding "ineffective-assistance-of-counsel claims generally may not be raised on direct appeal, and we decline to consider them here because the district court has not held an evidentiary hearing and an evidentiary hearing is necessary to substantiate Lopez's factual allegations." (ECF No.16-9 at 3 (internal citations omitted).)

The Nevada Supreme Court has explained that it "has repeatedly declined to consider ineffective-assistance-of-counsel claims on direct appeal unless the district court has held an

evidentiary hearing on the matter or an evidentiary hearing would be needless." *Archanian v. State*, 122 Nev. 1019, 1020-21, 145 P.3d 1008, 1036 (2006); *see also Feazell v. State*, 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995) ("Appellants can claim ineffective assistance of counsel at post-conviction proceedings. Such claims may not be raised on direct appeal, unless there has already been an evidentiary hearing."). It is clear from Lopez's appellate counsel's direct appeal briefs that he understood this law and believed the exception applied, arguing that an evidentiary hearing was unnecessary to assess the issue. (*See* ECF No. 16-3 at 13; ECF No. 16-7 at 9-10.) Further, as the state district court reasonably concluded, Lopez fails to demonstrate prejudice. Not including the ineffective-assistance-of-counsel claims on direct appeal would not have resulted in Lopez "prevail[ing] on his appeal." *Smith*, 528 U.S. at 285. Indeed, the result of Lopez's appeal would have been the same whether the ineffective-assistance claim was included or not: either the claim was not entertained by the Nevada Supreme Court, as was the case here, or it was left out in the first place. There was nothing to gain by not including the claim; rather, including the claim was merely a harmless endeavor that proved to be unsuccessful. Accordingly, because Lopez's ineffective-assistance-of-appellate-counsel claim was reasonably denied, Lopez is denied federal habeas relief for ground 4.

## IV.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Lopez. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a

petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*. Applying these standards, this court finds that a certificate of appealability is unwarranted.

## V. CONCLUSION

In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

      1.     The petition (ECF No. 1) is DENIED.

      2.     A certificate of appealability is DENIED.

      3.     The clerk of the court is directed to enter judgment accordingly.

Dated:  June 28, 2021.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE